Next case for argument is 17-2553, Diebold Nixdorf v. ITC. Thank you for your patience. We realize you had to sit through a lot more time than you anticipated. No problem, Your Honor. If it would please the Court, I am Patrick Flynn. I represent Diebold Nixdorf. I'm optimistic that anything relevant I would have to say can be said within the time limits. I want to start with the question of the invalidity of this patent and, in particular, the indefiniteness of the check standby unit claim element. The intervener has sent a letter citing the zero-click case, which I think actually gives us a good starting road map for looking at this issue. It tells us the analytic steps we should take. The first step is look at the claim language to see what structural words are used, if at all, in the claims and how do they inform that decision. Look at the specification and the intrinsic record. Then, as necessary, look at the extrinsic record. We can do all three of those things in this record. We come up, as I hope to show you, with the inevitable conclusion that check standby unit is claimed in purely functional terms defined only by what it does. The first thing is the word unit. As the briefs made clear, the word unit appears in 13 different elements in the claims, all wildly different functions. The unit itself, and no one seems to argue this, does not compose any particular structure at all. It is a nonce word. Then we have the other two words, check and standby. If you look at them individually, check isn't the structure. It's what the structure is supposed to operate on. Standby isn't a structure. It's what's supposed to happen to the check. The words of the claim language itself point us strongly in the direction of a purely functional element. We look at the specification. The written description contains only two mentions of check standby unit. One in column two and one in column five. One of them tells us where it is and the other one tells them what it does. Neither part of the written description tells us what it is. Then we look at figure two, which is the figure describing the structure itself. The check standby unit is designated as structure 120. That is simply pointing to a line on the belt. The administrative law judge basically said that it configured to hold the checks for purposes of until we know whether they have to go back. The administrative law judge said that in the context of the claim as a whole, you could understand that there is structure that would have to hold the checks, would have to be within the beltway, essentially. Why isn't that enough? Again, respectfully, Judge O'Malley, that's telling us where it is on the belt and what it does. It holds the check. Importantly, when you look at that figure, when you look at that belt, that spot on the belt, even if you include the vertical portion or you just simply point where the arrow is pointing, cannot serve that function because the claims require that you're processing a bundle of sheets, including at least the check, and that you're depositing it on that belt at predetermined intervals. Yet at the same time, you are stopping for an indefinite period of time, one check to decide whether you're going to complete the verification. How you accomplish that with simply a belt on the check, with all of those checks coming around, is not explained in the patent because there is no structure disclosed that can accomplish that. Maybe you lift the check off the belt somehow. Maybe you have a second belt, but that's not anywhere in the specification. In the briefing, a great emphasis is put by my adversaries on the fact that, well, you had extrinsic evidence. You had the testimony of Dr. Howard. That testimony is found at the appendix at 3219-20, and it is one sentence answering in the written direct testimony, question 189. All that answer says is there is structure because of what its function is. More specifically, he said that this would, quote, refer to a physical portion of the cash and check depositing module that is comprised of well-known components for holding checks in a standby configuration. He might as well have said means for holding checks in a standby configuration because all that testimony tells us is, again, a purely functional definition. Well, I mean, we do have an expert saying that we're just talking about well-known components. What's interesting is, again, he is not saying any specific components at all. He's just saying it could be well-known components. What would be relevant is if the term check standby unit appeared somewhere in an extrinsic record, like, for example, in the Greenberg case where you had detent mechanism, and there was evidence outside the record that detent mechanism was something you could find in a catalog labeled detent mechanism. But the record is clear in this case that the term check standby unit appears only in this patent and nowhere else. There is no description whatsoever of check standby unit in the extrinsic record as having a meaning before this patent existed or at the time of the existence of this patent. Well, but the testimony of, is it Dr. Howard? Dr. Howard. Dr. Howard was to the contrary. He says it does have a well-understood meaning structurally. He doesn't elaborate on that, of course, but he says it. If that were the rule, if you could evade what is otherwise declared in the extrinsic record as clearly limited only by function, is you could evade that by saying, well, I know what the structure is. It's well-known components that would perform this function, and that's all. Then you would, any expert could say that. Why is detent mechanism something that we can look up in a technical dictionary? Why is our ability to look it up there any different than our ability to turn to an expert to say, everybody knows what this means? Again, the expert didn't say everybody knows what a check standby unit is. What the expert said is the check standby unit means components that perform this function. That's all the expert said. So he said well-known components. He said certainly, and he, when asked to assume it was means plus function, he gave you a wide range of explanations, a trap door, a suction cup, for example, which theoretically under that assumption would be the narrower of the construction. But what we still today don't know, even with all the briefing as we sit here in this room, is what is a check standby unit other than what it does? What structures that someone could invent tomorrow or a year from now that could perform this function that would not be covered by this claim? That's the problem, Your Honors, with allowing functional claim language unbounded by disclosure in the patent. Because as the Halliburton report told us, when you allow that, what that means is you are foreclosing people for inventing new ways of performing that function. But what about the diagram? Doesn't it look from the diagram that there's sort of an off-ramp here that's provided to pull the checks? There isn't. There is simply a spot on the belt, that vertical spot. And again, the problem I mentioned to Your Honor earlier is that when you have these other bills coming, maybe cash, maybe more checks, they're all coming on this belt and it's moving. And it's kind of like that I Love Lucy episode where Lucy's trying to catch up with the chocolates that are coming on. You have to have some way to stop that check, get it off the belt, to allow the other ones to process at their predetermined time intervals. That can't happen without a structure capable of doing that. And there is nothing in that diagram and certainly nothing in the text that does that. How much would, in your view, Dr. Howard have had to say? You say he can't simply stand up and say, this is well known, and then sit down, or in effect sit down. How much more would be required, by way of extrinsic evidence, to satisfy you that there actually is a well-known set of well-known components, a physical structure consisting of well-known components? Well, there are two things. The first thing is, if all he says is it's components that perform the function, he is simply restating a functional test. But secondly, if he had... Let's get a little more in there. Sure. He said it's a physical structure... Sure. ...consisting of those. If he had a catalog from the time of the patent, if he had a reference book that he had, if he had a machine that was labeled checkstand by unit. But this record is absolutely clear. This term was coined by this inventor to clearly try to cover any components that would perform this function. In the remaining few minutes, I wanted to turn to the claim scope issues that are addressed, that are also an issue in this case, where we believe there was error by the commission. The first one is the question of tripartite detection of overlapping sheets. It bears emphasis that this was the claim element that was required for the patent to be issued. It was the point of novelty of this invention to use three sensors to detect overlaps, bearing in mind that at the time that amendment was entered, the claim already required the verification unit to detect abnormalities. So it was not enough to detect abnormalities to get this claim allowed. The claim had to detect overlaps. In this case, there is no dispute whatsoever about what the accused overlap detectors actually do, which is only detect abnormalities that might be an overlap, but might be something else. For example, the photo sensors simply detect a sheet that is too long. It could be two partially overlapped sheets that haven't separated, or in fact it could be a single sheet that's like a store coupon that got stuck in the machine by mistake. But isn't that still saying that it detects the overlap? I mean, for example, PSA tests are notorious for, they're used to detect prostate cancer, and they're notorious for having some significant amount of false positives. But they did nonetheless, you wouldn't disagree that they detect prostate cancer, right? Even though there are false positives. Why isn't that exactly the argument you're making? That if there are false positives, as you're suggesting, that it doesn't detect. My difference is it's not detecting false positives. Let me give you a slightly different medical example, Your Honor, if I can. Imagine a thermometer. It can detect body temperature. You wouldn't, to stop before you get to your example, how about, you would agree with me that PSA tests, notwithstanding the false positives, detect prostate cancer, correct? They detect indicial prostate cancer and nothing else. The PSA, an elevated PSA. But suppose they did. I mean, suppose they also detected some kind of other non-carcinogenic. Let's say, in the large prostate, for example. Okay, yeah. BPH or something. They did, detecting abnormalities in prostate. And then the patent examiner said, no, that's not new. You say, I need to discover actual prostate cancer. And you added an element requiring a detector for detecting prostate cancer. Under that circumstance, I would suggest the PSA test wouldn't. But let me give you the thermometer example I had.  No one would consider a thermometer a detector of bubonic plague. It's actually important to know the difference between those two because the remedies and consequences of not addressing it are very severe. So when you have an instrument that the patent office said actually has to detect overlaps and not mere abnormalities, detectors that detect species of abnormalities but not distinguishing between them is not respectfully an overlap detector. So you're well into your rebuttal. I will sit down now, Your Honor. So we're going to hear from the other side. Thank you. Good afternoon and may it please the court. We're going to rely on you. You're splitting the time and you're checking the first half. So we're running the clock at 15. Okay, thank you. I mean, the fundamental problem that Diebold has is a lack of proof. They have absolutely no evidence. This is with respect to the checks sent by units. They have absolutely no evidence in their record that one of ordinary skill in the arts would not understand the structure that connotes the checks sent by units. But where is your evidence that one of skill in the arts would understand that? The evidence is Dr. Howard's testimony. Dr. Howard testified that an ordinary skilled artist and would know, would readily understand that a check sent by units is the escrow. But his testimony is all related to what it would do. He said that a procedure would readily understand that a structure in an ATM that temporarily holds checks pending the customer confirming the deposit is the check sent by unit. Right. But he also gave examples of what it could be. And that's actually part of my problem because he had multiple examples. And they weren't limiting. I mean, it could, I mean, the question is if it's functional claiming, the problem is, or one of the problems is, is that anything that performs the function would come within it. And that's problematic. This court's case law is clear that it can include a class of structures. So what he mentions is a class of structures.  It's a class of structures. But the inquiry always relates to one of ordinary skilled arts. But did he preclude also any structure, even if he didn't cite it as by way of example, did he preclude any structure whatsoever, even if we can't even think about how wide that is, that performs that function as not being covered? I mean, Chief Judge, the concern that generally happens with functional claiming is foreclosing other checks sent by units, for example. This invention is not directed to a check sent by unit. The inventors do not purport to have invented a check sent by unit, a new check sent by unit, or even a modified one. Respectfully, I don't think you're responding to my question, or maybe I'm just not clear. I'm just trying to make a distinction between the cases where the functional claiming is of concern because it forecloses other inventions versus this case here, where the invention is directed to the ability to process check and cash at the same time. That is the invention. But the problem is that it is a limitation of the claims. That's correct. They didn't have to mention the check sent by unit, even if they wanted to have one in there, right? They had to mention it. In describing the invention, they had to necessarily describe how the processing takes place. Why did they have to have it as a limitation of their claim? Presumably they thought that that was an important feature of the device for purposes, perhaps, of avoiding invalidity. It's an element of the claim, so it is important. The distinction I'm trying to draw is the distinction in this court's case is where the court is very concerned about foreclosing future inventions. But we have never said that if something is, to my knowledge, and correct me if I'm wrong, we've never said that a limitation which is less than central, core importance to the invention can be claimed in a functional manner. This court does allow functional claimant. In Greenberg, there are multiple cases where the court does allow functional claimant. But Greenberg's decision, the decision in Greenberg, was that that was structural. It wasn't functional, despite the fact that it described the structure by use of a functional term. Which is what the commission found here. The commission's finding is that it is, agreed with ALJ, that it is structural. Show me in the specification where I can see anything that indicates any kind of even... There is a patent incorporated by reference, and this is in APPX... It's in APPX 5583, and that is incorporated by reference. I'm sorry, 5583? 5583, yes. I'm talking about the specification. Right, this patent is incorporated, it's a patent incorporated by reference here. And it does show an element 114. Temporary standby unit? It's actually on the next page, 5584. No, 5585, excuse me. And it shows element 114. And that element is referred to in the patents as the temporary standby unit, which is the check standby unit. And this patent is incorporated by reference in this 235 patent. Okay, so that's where you're referring to figure 2A, And where in the specification does it tell us what 114 is? If you go to column... The temporary standby unit, is it column 4, line 14? Is that what you're talking about? That's correct, yes. So that shows you that it's a structure. So slow down, because none of this was in the briefs. I mean, the patent is incorporated by reference. Where's the incorporation? The incorporation is on... If you look on the 235 patent, and it's on column 5, line 1, 2, line 3, through 5. It mentions the serial number, which is the serial number for this patent by the same inventor. So what line are we on? Column 5, line... Line 23? Column 5, line 3, through 6. Actually, it really talks about its U.S. patent application serial number, which is incorporated here by reference. And that does show structure. I mean, the bills also show structure. 120 also suggests that it is structure. Well, that's a description of the sensors, right? No, I mean, the patent itself... I understand, but this paragraph is a description of the sensors. That is correct. That paragraph describes the sensors. It describes the tripartite sense. So your argument is that this, even though that paragraph is directed to the sensors, the fact that it references the patent application, which matured into this 422 patent, is the structural reference to which we should look for purposes of determining the description of structure. Is that right? What I'm saying is that it indicates that the checks and by-units are structure. What the Commission is relying on is expert testimony. The Commission didn't rely on this reference. The Commission didn't mention that. What the Commission relied on below was the expert testimony of Dr. Howard. In your view, would the... Well, never mind. Go ahead. You're now into your friend's time, so if you want to... Thank you, Your Honors. May it please the Court. We're struggling here. I'd like to pick up on the means plus function issue, and I think just... How about this incorporated by reference? Well, I think what's relevant to that is it shows... It wasn't in either brief. It wasn't mentioned in the brief, Your Honor. So I assume that, at least at the time the briefs were written, you didn't regard it as a very important point. Well, it comes up in response to their insistence on the lack of the structure, and I think what it's... When we say the case... True. I think it's what it's... In their opening brief, you didn't respond by saying, ah, but here's the structure. And I think why my friend raises it, it's relevant in this sense, is it shows, confirms what a person of ordinary skill in the art would know, which is this is the type of component which would be an escrow unit, which is referred to as a drum escrow unit, which is what Dr. Howard referred to. And if I could just circle back just quickly to Zeroclick, because I think that there's two propositions of law this Court reaffirmed in that case that dispose of this issue here. One is that when claim terms do not use means, there's a rebuttable presumption that there is not impermissible functional claiming going on, which puts the burden on the challenger to come forward and show that there is. And then the other is that the essential inquiry, this Court said in Zeroclick and it drew from Greenberg, is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. And Dr. Howard, in his testimony, answered that question. He did it in the written testimony that my friend referred to at 319 to 320. Does his testimony, before you start talking about it, what more does his testimony or anything in the record give us to being that the structure is defined by the function? Sure. Is there any structure capable of performing this function? Yes. And I'll answer that directly. He was asked on page 1631 of the appendix in his written testimony about this, referring to 189, which is, what is this check standby unit? And he said, I'm quoting, we've talked about many Cajun escrow units. These are well known. And then he says, these are clearly escrow units, well known units. And escrow units, they make something in their brief that you can't, if you Google check standby unit, you don't come up with anything. But if you Google ATM escrow units, with one click of the amount, your mouse, you would buy an escrow unit, which is typically a drum-like structure. Dr. Howard? We seem to, on both sides, seem to be invoking the internet exception to the record limitation. But with respect, Your Honor, I mean, the point is, Dr. Howard's the expert here, one in skill and the art. He was skilled in machinery, familiar with ATMs, and he knew exactly what they were referring to. It's as if... But did he? I mean, it seems to me what he is saying, and this goes back to Chief Judge Prost's question, is that anything that performs this function is satisfactory. He didn't exclude anything. In fact, my recollection is that he expressly declined to exclude any structure. With respect, I would disagree with that, Your Honor. When asked about what this was, he said, clearly, escrow units. That's what he said on 1631. The questioning about suction cups and trap doors... Escrow units doesn't help me. I mean, that's just another functional description. I don't think... It's not, Your Honor. I think it's much more akin to a brake or a lock or a screwdriver, to one of skill and the art. And, you know, the way to confirm that is Google ATM escrow unit, and you will find a specific structure. These are drum-like escrow... And you think this patent is limited to that specific structure? Well, I don't know that... No, not really. But, of course, it doesn't need to be limited to a particular structure. This Court said that in liming world, it can be a variety of structures. Right. And Mr. Howard did say that drum-like escrow unit on page 1646. The machines that issue in this case do have that drum-like escrow unit. You can see that on the diagrams on pages 14 and 17... So, would it... Are you saying that if the specification simply said drum-like escrow unit, that would be enough? I think it would, just like as if it had said a lock or a brake or a filter... But it doesn't say any of those things. Well, what it says is check standby unit. And then the question, the essential inquiry into this Court's cases is, would a person of skill in the art understand that? And the answer from Dr. Howard was clearly yes, they would understand it as being an escrow unit. Dr. Sturgis was the witness on the other side. He never denied that. He didn't deny that a person of skill in the art would understand this to be an escrow unit. All he said, and this is critical, I would urge the Court to look at his testimony on this, which is at pages 13... I'm sorry, 3567 to 68. All he said was the legal conclusion that one skilled in the art would agree with respondents' proposed construction of a check standby unit to be a means plus function phrase. That's on page 3668. So again... But then he goes on to say that the 235 patent fails to provide any corresponding structure for performing the recited function. Right, but that's answering a different question. And I think that really goes to the second step of the inquiry here, which is assuming it is a means plus function term, then where in the specification is the structure? But the threshold step is... Two questions are closely associated, I think. I think this Court has described it as a two-step inquiry. That's true, but there's a very similar inquiry. And if at the first step the Court would conclude that one of skill in the art would understand the words of the claim, check standby unit, to have definite structure, as Dr. Howard clearly testified they would, and as their expert never even denied that specifically, that one of skill in the art would understand this clearly to be an escrow unit, then that's the end of the inquiry under zero-click, because they have the burden, they have to rebut that presumption, and they've got nothing from their expert saying that a person of skill in the art would not understand this to be the commonly used component, an escrow unit. And I think one of the confusions here is the term escrow unit. And that's not a term that I at least was familiar with before this case or that's used in common parlance, but to the person of skill in the art it is. And as I say, with one click of the mouse you can buy an ATM escrow unit. But we don't have a patent that claims an escrow unit, right? Or a check standby escrow unit. We just have a check standby unit. Right, and that's why you would go as the essential inquiry to the person of skill in the art and ask them, do you understand what this means? Does this term have definite meaning to you? And the answer from Dr. Howard was unequivocally yes. He said clearly it means escrow unit. And that is something of one of skill in the art would know. It's something you can buy over the Internet. He referred to it as a drum-like escrow at page 1646. That happens to be exactly the structure that is used in both of these machines here. You can see it in the diagrams on pages 14 and 17 of our brief. It's just like a lock. It's like a filter. It's like a clamp. If the patent here had said use a wood fastening device and a person of skill in the art came forward and said, I know exactly what that is. That's a screw. I think that would be the end of the inquiry. And that's basically what Dr. Howard testified to here. What do you say about the language from Williamson that refers to a similar argument that the expert testifying as a person knowledgeable in the art, the court said the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification. I think a couple of things, Your Honor. One, I think Dr. Howard's testimony is more specific here in terms of the structure, and that was an escrow unit. He said that clearly. And then the second and related thing is that in Williamson, you were talking about computer terms, interface and the like, which is a more abstract, less sort of inherently structural component. Here Dr. Howard was testifying about, you know, a physical structure, the ATM escrow unit, something that he was familiar with, something that is typically a drum-like escrow unit, which is what he referred to in his testimony. And I think here there's no basis for this court to overturn the ALJ's finding on that expert testimony. The ALJ heard from both experts. Our expert put in testimony as to what a person of skill in the art would understand this to be, an escrow unit, clearly a well-known component. Their expert was silent on that. He didn't deny that a person of skill in the art would understand it to be an escrow unit. He didn't deny that that was a well-known component. Instead, their expert simply advanced a legal proposition that this was a means plus function term. But, of course, this court doesn't know any deference to that. That's, you know, this court's inquiry. And the court doesn't need to get to that inquiry because if the court agrees, as we think it must under the evidence in light of the ALJ's findings, that check standby unit does connote a meaning with definite structure because a person of skill in the art would understand that to be an ATM escrow unit, something you could buy off the Internet with one click, then that's the end of the inquiry. There's definite structure, just as if the patent had referred to a lock, a clamp, or a brake. If the court has no further questions, we urge it to affirm the commission's determination. Thank you. Thank you very much. I have just a couple of very brief observations. To the extent that it's relevant, the check standby unit was added as a limitation during prosecution, so it was not something that was there as a side issue. And with respect to the overall invention, which is the notion of trying to process a bundle that includes at least a check, the obvious problem of how you handle the deposit of a check in the midst of handling whole bundles of things, the check standby unit is an essential part of that problem. I want to turn to this continued use of the word escrow and make a couple of observations about it. One of the things Judge Romali pointed out, it's not in the patent, it's not in the claim. They did not claim an escrow unit. They claimed a check standby unit because they clearly wanted to claim something more than a drum-like structure. Indeed, there is no evidence in the record that the drum-like structures you can buy on the Internet now were even known or invented at the time of this patent. What this inventor may well be trying to do is to claim the drum structures that he didn't invent, because they're actually fairly elaborate. They allow you to put a number of checks on at the same time and then decide to pull only one out while leaving all the others. They're fairly sophisticated devices. There isn't a shred of evidence that this inventor invented that. He shouldn't be allowed to claim it. And when you look, I do urge you to look at Dr. Sturgis' testimony. He does more than recite the legal standard.  Thank you, Your Honor. Thank you. We thank both sides and the cases together. And that concludes our proceeding for this morning. All rise.